UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-69 (PAM/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| DEONTA LANLLIE DENTON, | |
| Defendant. | |

This matter is before the Court on Deonta Lanllie Denton's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 17) and Motion to Suppress Statements of Defendant (Dkt. No. 18). Mr. Denton, who is charged by indictment (Dkt. No. 1) with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), claims that the police searched him and questioned him in violation of his Constitutional rights. He seeks suppression of the physical evidence that the police seized from him and the statement he made to a Saint Paul Police Department Sergeant while seated in the back of a police car after being detained. (Def.'s Mem. Supp. Mots. Suppress 1-2, Dkt. No. 42.) This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court held a motions hearing on July 5, 2024. (Hr'g Tr. 1, Dkt. No. 26.)[1] Assistant United States Attorney David Classen appeared on behalf of the United States (*Id.*) and called as witnesses Officer Glenn Perez (*Id.* at 7:18–19), Officer Eric Jaworski (*Id.* at 43:5–6.), and Sergeant Matthew Welters, (*Id.* at 14:19–20) all of the Saint Paul Police Department. The United States also submitted exhibits including the body-worn camera ("BWC") footage from Officers Perez (U.S. Ex. 1) and Jaworski (U.S. Ex. 2) as well as Sergeant Welters (U.S. Ex. 3.) Andrew Garvis appeared on behalf of Mr. Denton. (*Id.* at 1.) The Court received post-hearing briefing from Mr. Denton (Dkt. No. 27.) and the United States. (Dkt. No. 28.)

The Court recommends denying Mr. Denton's motions to suppress evidence because the record shows the police had reasonable articulable suspicion to support an investigatory search of Mr. Denton, making the search constitutional. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). As to Mr. Denton's challenge to his statement, "It's f\*\*cked up here, I had a gun. … I'm selling drugs just trying to feed my family," (U.S. Ex. 3) the Court recommends denying Mr. Denton's motion because the statement was not made in response to police questioning. Rather, Sergeant Welters was checking on Mr. Denton's physical wellbeing after Officers Perez and Jaworski used force to detain him. (*Id.*) Mr. Denton's statement was made without prompting from Sergeant Welters and was designed to negotiate his release from police custody.

---

[1] The motions hearing transcript is currently filed under seal, but the Court has not cited any personal identifiers or confidential information that either party requested to be redacted.

## BACKGROUND

Just before 10:00 a.m. on January 29, 2024, St. Paul Police Department ("SPPD") officers were called to a Speedway Gas Station on West 7th Street for a BMW vehicle that had been parked at the gas station for over an hour with a man reportedly unconscious behind the wheel. (Def.'s Mem. in Supp. 2, Dkt. No. 27; U.S. Resp. to Def.'s Mot. To Supp. 2, Dkt. No. 22.) Officers Glenn Perez and Eric Jaworski responded and noticed the BMW parked just outside the front door. (Def.'s Mem. in Supp. 2, Dkt. No. 27.) They approached the vehicle and saw one occupant who appeared to be asleep in the driver's seat of the BMW, which was still running, with no other occupants visible. (U.S. Resp. to Def.'s Mot. To Supp. 2, Dkt. No. 22.) They also saw a clear plastic baggie containing a green substance that appeared to be marijuana on the front-passenger seat. (*Id*.) When they awoke Mr. Denton and asked him for his identification, he picked up the baggie, and the officers observed that he appeared to be confused and had pin-point pupils. This, combined with his lethargic demeanor and slow responses to police questions, led the officers to believe that Mr. Denton was intoxicated. (*Id*.)

Officer Perez asked Mr. Denton to turn off his car, a request which Officer Perez testified seemed to confuse Mr. Denton. (Hr'g Tr. 15:3–9.)  Officer Perez continued, testifying that Mr. Denton at first did not respond to his request and then turned on the windshield wipers, as though he did not know how to turn the car off. (*Id*. At 16:16–17:2.) Officer Perez then asked Mr. Denton if there were any firearms in the vehicle, to which he responded, hesitantly, that there were not. (U.S. Ex. 1.) Officer Jaworski stayed with Mr. Denton while Officer Perez returned to the squad car to check Mr. Denton's record for any

potential warrants or restrictions. (*Id.*) The check returned no warrants, but it did notify Officer Perez that Mr. Denton's license was revoked. (Hr'g Tr. 17:17–18.) After running Mr. Denton's license, Officer Perez returned and asked Mr. Denton to exit the vehicle for "a quick pat down," and asked him again whether he had any firearms on him. (U.S. Ex. 1.) He did not tell Mr. Denton that he suspected him of being intoxicated.

Mr. Denton did not originally comply with Officer Perez's request that he get out of the vehicle. Instead, he spent an extended period of time collecting various items from the vehicle, including a vape pen and the marijuana that the officers had seen on the passenger seat. (*Id.*) The officers told him that his actions were making them nervous and began helping Mr. Denton get out of the vehicle. (*Id.*) When he was out of the vehicle, Officer Perez asked Mr. Denton to put his hands on his head, which he did briefly before beginning to resist the officers and asking them to "back [him] up from the car." (*Id.*) The officers acquiesced and moved him backwards from the car, but Officer Jaworski said "If you're gonna run, you're definitely gonna get hurt." (*Id.*) Mr. Denton said "I'm not running shit." (*Id.*)

As Officer Perez began the pat down, Mr. Denton began to struggle with the officers, escaped their grasp and ran fifteen to twenty feet before being tackled by Officer Jaworski, who placed him under arrest. (*Id.*) When the officers detained Mr. Denton, the officers commented on the wisdom of Mr. Denton's choice to run and asked him his reasons for doing so. (*Id.*) He said, "'cause I got a gun in my pants," (*Id.*) at which time Officer Jaworski removed a loaded 9mm handgun with an extended magazine and a round in the chamber from Mr. Denton's waistband. (Hr'g Tr. 53:15–18.)

Per Saint Paul Police Department policy regarding the use of force, Sergeant Welters later came to the scene of the incident to evaluate the physical wellbeing of the officers and of Mr. Denton and check whether any action needed to be taken regarding the altercation. (*Id*. at 66:4–15.) Part of that evaluation was to ask Mr. Denton if he was "doing ok" and whether he "need[ed] anything from [him]." (U.S. Ex. 3) In response, Mr. Denton began making offers to assist police in various ways if Sergeant Welters would let him go. (*Id*.) Sergeant Welters consistently rejected Mr. Denton's offers and asked no more questions, but it was during this bargaining that Mr. Denton said,

> I just did five years, man. I just had a fresh newborn baby. It's f**ked up out here. I had a gun. I'm selling, selling drugs, trying to feed my family. I'm not out here trying to, you know, cause no problem. Okay. Doing no, you know, bad shit to nobody. It's just the environment I'm in. I got, you know, be protected a certain way, but I'm just trying to get it, trying to do the right thing.

(*Id*.) Immediately after Mr. Denton said this, Sergeant Welters said that he was not asking him about what happened, and that he was just asking whether he was physically well after the incident. (*Id*.) This is the statement Mr. Denton argues should be suppressed because, at this point, he had not yet been read his *Miranda* rights. (Hr'g Tr. 69:1–4.)

## ANALYSIS

**I.    The physical evidence taken from Mr. Denton need not be suppressed because it was not seized as the result of an unconstitutional search.**

Mr. Denton argues that Mr. Denton's interaction with Officers Perez and Jaworski was unconstitutionally extended when they asked him to get out of his car for what the officers testified was a field sobriety test and attempted pat-down search.

5

### A. The evidence was seized after a constitutional pat-down for officer safety before a constitutional field sobriety test.

If, in a traffic stop or other interaction with the public, an officer develops reasonable, articulable suspicion that criminal activity has occurred or is occurring, "he has 'justification for a greater intrusion'." *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005) (quoting *United States v. Bloomfield*, 40 F.3d at 918, 923 (8th Cir. 1994)). Mr. Denton's chief argument for the suppression of the firearm seized by Officers Perez and Jaworski is that, by asking Mr. Denton to exit his vehicle after officers learned there were no warrants for his arrest, the officers unconstitutionally extended the traffic stop. Mr. Denton argues that the purpose of the stop, which was in response to a call reporting a man passed out in a car outside a gas station, was to ensure Mr. Denton's safety and the safety of others. He says that purpose was achieved when Officer Perez found him to be "alert" and, after running his license through the state database, learned that there were no warrants for Mr. Denton's arrest. He argues that any rationale that the officers had for extending the stop beyond that point was pretextual and therefore, unconstitutional. Mr. Denton argues that because Officer Perez did not tell him that they suspected that he was intoxicated and told him he was "not in any trouble; nothing's going on" (U.S. Exs. 1, 2) before he got out of the car, the claim that he was suspected of being intoxicated was fabricated after the incident to rationalize the officers' actions.

The United States disagrees. It states that the officers had reasonable suspicion to believe that Mr. Denton was intoxicated and therefore permissibly asked him to get out of his car, in anticipation of conducting a field sobriety test. This argument is supported by

6

the officer's testimony, and after reviewing the BWC footage from both officers, (U.S. Exs. 1, 2), the Court finds it persuasive. The BWC footage shows the officers approaching Mr. Denton, who seems to be asleep in a car. When he wakes up, he appears disoriented and speaks slowly with a slight slur to his speech, and what the officers suspected to be marijuana is clearly visible in a bag on the passenger seat. (*Id.*) When Officer Perez is in the squad car and reports to dispatch that Mr. Denton is "alert" it appears as though he meant simply that he was conscious and able to communicate, (*Id.*) rather than that he did not show signs of intoxication, as Mr. Denton argues. Officer Perez also says to Officer Jaworski that "He's clear if we can get him out. He's got that weed."

This shows that although Mr. Denton did not have any warrants for his arrest, Officer Perez had additional suspicions regarding the suspected marijuana on the passenger seat that he wanted to investigate further, whether that be that Mr. Denton was under the influence of marijuana such that he could not safely drive a vehicle or some other reason. Considering Mr. Denton's demeanor and the visible marijuana, the Court finds that Officer Perez had reasonable, articulable suspicion that Mr. Denton may be intoxicated, which provided a constitutional rationale for a field sobriety test under *Sanchez*, 417 F.3d at 975 (8th Cir. 2005).

It is a common practice for police officers to conduct a brief pat-down search of a person before they perform a field sobriety test or other investigation regarding illegal drugs, and these pat-down searches are consistently held to be constitutional by the Eighth Circuit on the grounds that when a person's "actions create[] a reasonable suspicion that he was involved in drug trafficking," those actions "on [their] own justif[y] the protective

7

pat-down." *United States v. Stigler*, 574 F.3d 1008, 1010 (8th Cir. 2009). Therefore, because Officer Perez had a reasonable suspicion that Mr. Denton was impaired and may be involved with the use of drugs, his *Terry* pat-down for safety was constitutionally permitted. *See United States v. Clark*, No. 20-CR-213 (MJD/LIB), 2021 WL 5310995, at *8 (D. Minn. Sept. 17, 2021), *report and recommendation adopted*, No. CR 20-213 (MJD/LIB), 2021 WL 5310708 (D. Minn. Nov. 15, 2021) (citing *United States v. Navarrete-Barron*, 192 F.3d 786, 790-91 (8th Cir. 1999)). The Court recommends that Mr. Denton's motion to suppress the evidence seized upon his arrest be denied because the evidence was seized as the result of a constitutional pat-down search in connection with a permissible attempt to conduct a field sobriety test.

### B. Even if the evidence was not seized as the result of a constitutional *Terry* stop, it was seized as a lawful search incident to arrest for resisting the official acts of Officers Perez and Jaworski.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A search conducted without a search warrant issued by a neutral and detached judicial officer is presumptively unreasonable unless the search is justified by one of a few well-recognized exceptions to the Warrant Clause. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("[O]ur analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted))). If the United States seeks to justify a warrantless search by asserting that the search fell

8

within one of the exceptions to the Fourth Amendment's Warrant Clause, it bears the burden of showing (1) the need for an exception from the warrant requirement and (2) that the challenged conduct of law enforcement fits within that exception. *United States v. Riedesel*, 987 F. 2d 1383, 1388 (8th Cir. 1993).

A search incident to a lawful, custodial arrest is a well-recognized exception to the warrant requirement. *Chimel v. California*, 395 U.S. 752, 762–63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape" and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.")[2]; *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.") The validity of a search incident to arrest is dependent on the validity of the underlying arrest under federal law. *United States v. Lewis*, 183 F.3d 791, 793–94 (8th Cir. 1999); *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995).

The Eighth Circuit has held that "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Guevara*, 731 F.3d 824, 832 (8th Cir. 2013) (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (in

---

[2] In *Arizona v. Gant*, the Supreme Court abrogated *Chimel* in part, tightening the limits on searches of motor vehicles conducted under the authority of the search incident to arrest exception. *See Davis v. United States*, 564 U.S. 229, 232–35 (2011) (describing this doctrinal shift). *Gant* left untouched the holding of *Chimel* quoted above, that a lawful arrest authorizes a search incident to that arrest. *Gant*'s limitations on *Chimel* are not relevant to the analysis in this Report and Recommendation.

turn quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011))). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523). Once probable cause exists to believe that a suspect has committed a felony, police can arrest a suspect without a warrant in a public place. *United States v. Watson*, 423 U.S. 411, 421–24 (1976).

Even if there was no support for Officer Perez's suspicion that Mr. Denton may have been guilty of driving while intoxicated, the officers certainly had probable cause to arrest Mr. Denton under Minn. Stat. 609.487 subd. 6, which criminalizes actions taken to evade or elude police. Minnesota peace officers are authorized to make a warrantless arrest when an offense has been committed in their presence. MINN. STAT. 629.34.1(c)(1). Here, the officers were present when Mr. Denton intentionally wrestled himself free from them and began running. While Mr. Denton was attempting to free himself, Officer Jaworski said, "Okay now you're gonna get resisting," a clear statement by Officer Jaworski that he intended to arrest him for resisting the officers' search. It was only after that statement that Mr. Denton was able to free himself and Officer Jaworski chased him and tackled him to the ground. At this point, Officers Perez and Jaworski had initiated a lawful arrest and were constitutionally permitted to search Mr. Denton "in order to remove any weapons that [he] might [have sought] to use in order to resist arrest or effect his escape" under *Chimel*. 395 U.S. 762–63 (1969). The evidence Mr. Denton seeks to suppress was seized incident to that lawful search and therefore, need not be suppressed.

**II.     Mr. Denton's statement, "I had a gun. … I'm selling drugs just trying to feed my family," need not be suppressed because it was not made incident to a custodial interrogation.**

Mr. Denton seeks to suppress a single statement he made to Sergeant Welters when Sergeant Welters came to evaluate the use of force incident. The Court recommends that Mr. Denton's motion to suppress the statement be denied because it was not made in response to an interrogation.

The privilege against self-incrimination protects individuals from "compulsion exerted by law-enforcement officers during in-custody questioning." *Miranda v. Arizona*, 384 U.S. 436, 461 (1966). However, voluntary statements from a defendant "remain a proper element in law enforcement." *Miranda*, 384 U.S. at 478. If a defendant gives a statement "freely and voluntarily without any compelling influences," the statement is admissible as evidence. *Id*. The protections of *Miranda* apply to custodial interrogations, defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *United States v. Johnson*, 619 F.3d 910, 919 (8th Cir. 2010) (quoting *United States v. Flores–Sandoval*, 474 F.3d 1142, 1146 (8th Cir.2007)). Interrogation includes words or actions that police officers should know are reasonably likely to elicit an incriminating response from a suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Holman v. Kemna*, 212 F.3d 413, 317 (8th Cir. 2000). Questions by police are generally not considered interrogations unless "their point is to enhance the defendant's guilt." *United States v. LaRoche*, 83 F.4th 682, 689 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 858 (2024). When police ask questions

11

regarding a person's physical wellbeing, an interrogation has not occurred. *United States v. Jackson*, 852 F.3d 764, 771 (8th Cir. 2017).

Here, there is no question that Mr. Denton was in custody at the time of his conversation with Sergeant Welters. He was sitting in the back of a police squad car in handcuffs and restrained with a seatbelt. However, the questions asked by Sergeant Welter were not interrogatory, as defined in the Eighth Circuit. In the conversation, Sergeant Welters asked five questions. He asked Mr. Denton how he was doing that day and whether he was doing okay. (U.S. Ex. 3.) These questions were asked to determine if Mr. Denton needed medical attention after the incident with Officers Jaworski and Perez. (*Id.*) He then asked if Mr. Denton needed anything from the police, which Mr. Denton answered in the affirmative. (*Id.*) When he asked what it was, Mr. Denton asked him for a "favor," and when he asked what that favor was, Mr. Denton began pleading with him to let him go, offering to help police in various ways if he were to "catch a break." (*Id.*) None of these questions were designed to enhance Mr. Denton's guilt, but to establish that he was physically well and did not need medical attention.

As soon as Mr. Denton began his pleas to be let go, Sergeant Welters immediately and repeatedly told Mr. Denton that it was not possible for him to do so, and it was only after Sergeant Welters declined Mr. Denton's offers that Mr. Denton said,

> I just did five years, man. I just had a fresh newborn baby. It's f**ked up out here. I had a gun. I'm selling, selling drugs, trying to feed my family. I'm not out here trying to, you know, cause no problem. Okay. Doing no, you know, bad shit to nobody. It's just the environment I'm in. I got, you know, be protected a certain way, but I'm just trying to get it, trying to do the right thing. Know what I mean?

(*Id.*) Immediately after Mr. Denton made the statement, Sergeant Welters said he was only asking whether Mr. Denton was physically well. (*Id.*) Under *United States v. Jackson*, 852 F.3d 764, 771 (8th Cir. 2017), this welfare check is not considered an interrogation. Even if it could be, questions such as "Are you doing okay?" "Do you need anything from us?" or "What do you need?" are not "reasonably likely to elicit an incriminating response from a suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Holman v. Kemna*, 212 F.3d 413, 317 (8th Cir. 2000). All the other statements made by Sergeant Welters in the conversation either stated that he could not let Mr. Denton go or were incomplete thoughts, interrupted by Mr. Denton's requests to be let go. (U.S. Ex. 3.)

## CONCLUSION

Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Mr. Denton's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 17) be **DENIED**, and

2. Mr. Denton's Motion to Suppress Statements (Dkt. No. 18) be **DENIED**.

Date: September 23, 2024              */s/ John F. Docherty*
                                      JOHN F. DOCHERTY
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

13

objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).